## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENIZ PITSKO, on behalf of Jacob Pitsko, a minor and Michael Pitsko, Deceased; DENIZ PITSKO, Individually,** | : : : : | No. 3:24cv1055 |
| **Plaintiffs** | : | (Judge Munley) |
| **v.** | : : | |
| **GORDON FOOD SERVICES, INC.; THE HARTFORD; THE HARTFORD LIFE AND ACCIDENT INSURANCE CO.,** | : : : : : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Plaintiff Deniz Pitsko brings this action under the Employee Retirement Income Security Act ("ERISA") individually and on behalf of her minor son, Jacob Pitsko, and her deceased husband, Michael Pitsko (collectively the "Pitskos" or "plaintiffs"), to recover benefits she alleges were wrongfully denied. Plaintiffs assert claims against Defendant Gordon Food Services, Inc. ("GFS"), Michael Pitsko's former employer, as well as the Hartford and the Hartford Life and Accident Insurance Co. (collectively "Hartford") under ERISA, 29 U.S.C. §§ 1001, *et seq.* Plaintiffs also assert state law claims against the defendants.

Before the court are two (2) motions to dismiss the Pitskos' complaint filed by GFS and Hartford pursuant to Federal Rule of Civil Procedure 12(b)(6). The

parties have briefed their respective positions and this matter is ripe for a decision.

**Background**

This action arises out of three events that altered the course of the plaintiffs' lives: Michael Pitsko's workplace injury, the termination of his employment with GFS, and his subsequent death.  At all times relevant to this action, Michael and Deniz Pitsko were husband and wife, and Jacob Pitsko was their minor son. (Doc. 1, Compl. ¶¶ 5, 27).[1]

GFS hired Michael Pitsko as a full-time licensed commercial driver on or around May 18, 2016. (Id. ¶ 9).  Michael enrolled in GFS's healthcare plan ("Plan") administered by Hartford, which provided short-term disability benefits, long-term disability benefits, and family life insurance benefits. (Id. ¶ 5).

On July 16, 2017, Michael sustained a workplace injury which rendered him disabled. (Id.)  Michael thereafter began receiving workers' compensation and long-term disability benefits ("LTD" benefits) under the Plan.  Beginning on or around December 2017, Michael also received Social Security Disability benefits due to the injury ("SSD benefits"). (Id.)  Further, Michael's son, Jacob Pitsko

---

[1] These background facts are derived from plaintiffs' complaint.  At this stage of the proceedings, the court must accept all factual allegations as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

2

received Social Security benefits ("dependent benefits") as the disability prevented his father from engaging in gainful employment.[2] (Id.)

As alleged, Michael settled his workers' compensation claim with GFS on March 27, 2019. (Id.) Then, on March 28, 2019, Michael and GFS entered into a Separation Agreement and General Release ("Separation Agreement"), which retroactively designated November 30, 2017 as Michael's last day of employment. (Id.) Plaintiffs allege, however, that the Separation Agreement did not terminate Michael's ERISA benefits under the Plan, including his LTD benefits. (Id. ¶¶ 5, 9.) The Pitskos further maintain that Michael's ERISA benefits encompassed a waiver of premium benefit ("Waiver of Premium Benefit" or "Premium Waiver") under his life insurance, pension, and disability income benefits. (Id. ¶ 5.) Michael ultimately passed away on February 6, 2022 due to COVID-19 complications. (Id.) Two years later, plaintiffs initiated this action by filing the complaint.

Plaintiffs' claims arise, *inter alia*, from allegations that Hartford improperly reduced Michael's LTD benefits by offsetting them against Jacob's dependent benefits over their objection. (Id. ¶¶ 5, 11.) Additionally, plaintiffs allege that Hartford wrongly determined that no life insurance benefits were payable upon

---

[2] As alleged, Jacob received dependent benefits in the amount of $1,998.02 per month. (Doc. 1, Compl. ¶ 14).

Michael's death. (Id. ¶ 15). Plaintiffs also contend that neither Michael nor Deniz had ever received a copy of the selected benefits or instructions for continuing Michael's benefits as required by ERISA, despite their written requests. (Id. ¶¶ 12, 16). Per plaintiffs, Deniz should have received an ERISA notice advising her of the right to elect continued life insurance coverage under the Plan. (Id. ¶ 16). Plaintiffs further allege that defendants overlooked the waiver provisions of the Plan and thereby violated ERISA's notice requirements. (Id. ¶¶ 16,17).

Based upon the above allegations, the plaintiffs' complaint sets forth several causes of action against the defendants. [3] Almost all of the plaintiffs' claims are directed at both defendants. Those claims are as follows:

- Count I – Denial of ERISA benefits; failure to clarify rights to past and future benefits under the terms of the Plan, in violation of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), (id. ¶¶ 18–25);[4]

- Count II – Equitable relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), (id. ¶¶ 26–29);

- Count III – Improper offset of Michael's LTD benefits by Jacob's dependent benefits, (id. ¶¶ 30–33); and

- Count IV – Breach of contract under Pennsylvania law, (id. ¶¶ 34–38).

---

[3] Plaintiffs set forth their claims in the complaint as causes of action. For ease of disposition, the court will refer to these causes of action as "Counts."

[4] Plaintiffs also cite "1003 through 1371" in the heading of Count I. Presumably, plaintiffs are referring to 29 U.S.C. §§ 1003-1371.

4

It is worth noting that plaintiffs demanded a jury trial in this case. (Doc. 1-2, Civil Cover Sheet).

Defendants each responded to the Pitskos' complaint by filing motions to dismiss. (Docs. 12, 14). In its motion and brief in support, GFS argues that: 1) plaintiffs' state law claims are preempted by ERISA; 2) plaintiffs' claim for breach of fiduciary duty under Count II are duplicative of their claims associated with the denial of benefits under Count I; 3) GFS is an improper defendant under Count III of the complaint; and 4) plaintiffs' jury demand should be stricken. (Doc. 13, GFS Br. in Supp. at 6).  Similarly, Hartford, in its motion and brief in support advances arguments regarding ERISA preemption of plaintiffs' state law claims, the duplicative nature of Count II, and the propriety of striking the jury demand. (Doc. 15, Hartford Br. in Supp. at 6-7).  Hartford further contends that it applied unambiguous policy ("Policy") language in the following respects: 1) the offset of Michael's LTD benefits by Jacob's dependent benefits; and 2) the determination that Michael was not eligible for the life insurance Waiver of Premium Benefit under the Policy. [5] (Id. at 6).

---

[5] Michael's LTD and life insurance benefits under the Plan were governed by the terms of a Hartford policy (the "Policy").

**Jurisdiction**

Because the Pitskos assert claims under ERISA, a federal statute, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

**Legal Standard**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)).  This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

6

The court evaluates motions to dismiss using a three-step process.  The first step involves identifying the elements of each claim. <u>Oldham v. Pennsylvania State Univ.</u>, 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted).  The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. <u>See</u> <u>Lutz v. Portfolio Recovery Assocs.,</u> <u>LLC</u>, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). And third, the court evaluates the plausibility of the remaining allegations. <u>Id.</u> In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. <u>Id.</u> (citations omitted).

**Analysis**

For ease of disposition, this memorandum will first address Michael's eligibility for the Premium Waiver under the Policy.  Next, the court will determine whether the Pitskos' claims under Count II are duplicative of their claims under Count I.  The court will then move to the consideration of the propriety of offsetting Jacob's dependent benefits against Michael's LTD benefits. Thereafter, the court will evaluate whether GFS is a proper party with respect to

Count III of the complaint.  Following that, the court will consider whether ERISA preempts plaintiffs' state law breach of contract claims before finally addressing defendants' request to strike plaintiffs' jury demand.

### 1. Michael's Eligibility for the Life Insurance Waiver of Premium Benefit

The complaint, at the outset, is not a model of clarity.  Count I appears to challenge the denial of Michael's life insurance Premium Waiver under Section 502(a)(1)(B) of ERISA.  (Doc. 1, Compl. ¶¶ 18-25).  Plaintiffs allege that defendants failed to follow ERISA's procedural requirements for benefit claims, including the obligation to provide adequate written notice of the denial of benefits.  (Id. ¶ 19).  Second, plaintiffs contend that defendants wrongly deprived the Pitskos of the Waiver of Premium Benefit under the Policy.  (Id. ¶ 20).[6]

---

[6] Plaintiffs attached the Separation Agreement to the complaint.  (See Doc. 1-1, Ex. A, Separation Agreement).  Under the law, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b) motion.  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

Additionally, Hartford attached a copy of the Policy and denial letters to its brief in support of its motion, (Doc. 15-1, Ex. A, Policy), First Denial Letter, (Doc. 15-2, Ex. B, First Denial Letter), Second Denial Letter, (Doc. 15-3, Ex. C, Second Denial Letter), Third Denial Letter, (Doc. 15-4, Ex. D, Third Denial Letter).  A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based on the document."  Citisteel USA, Inc. v. Gen. Elec. Co., 78 F. App'x 832, 835 (3d Cir. 2003) (quoting Pension Ben. Guar. Corp., 998 F.2d at 1196)).  Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56.  Doe, 30 F.4th at 342 (citations and internal quotation marks omitted).

The Policy is integral to the complaint because it forms the basis for plaintiffs' claims.  Likewise, the denial letters are integral to the complaint as plaintiffs' claims are predicated on the denial of the Waiver of Premium Benefit and on plaintiffs' assertions that defendants failed to provide

Hartford, however, denies those allegations.  Per Hartford, its determination that no life benefits were payable at Michael's death was proper for two reasons: Michael did not continue his life insurance coverage after it lapsed; and he was not eligible for a Premium Waiver under the terms of the Policy. (Doc. 15, Hartford Br. in Supp. at 1).  Moreover, Hartford asserts that Michael exhausted his administrative remedies prior to his death. (Id. at 4).  To support its arguments, Hartford attached a letter dated August 15, 2018 in which Hartford upheld the denial of the Waiver of Premium Benefit. (Doc. 15-2, Ex. B, First Denial Letter).

As a preliminary matter, the Policy designates Hartford as the claims fiduciary and provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (Doc. 15-1, Ex. A, Policy, at ECF pp. 93, 96).  On the other hand, the Policy names GFS as the plan administrator. (Id. at ECF p. 94).  Additionally, the Policy provides that "[t]he Plan Administrator reserves full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice." (Id.)

---

timely written notices of that denial. Hence, the court will consider these documents in ruling on Hartford's motion to dismiss.

### i. Michael's Failure to Continue His Life Insurance Coverage After It Lapsed

Hartford asserts that the underlying administrative record establishes that Hartford notified Michael of his right to continue his life insurance coverage, yet Michael declined to do so.  (Doc. 15, Hartford Br. in Supp. at 2 n.1; see Doc. 15-2, Ex. B, First Denial Letter, ECF pp. 3-4).[7]

A review of Hartford's August 15, 2018 letter to plaintiffs' counsel indicates that GFS advised Hartford that Michael's life insurance coverage was discontinued for his failure to make timely premium payments. (Doc. 15-2, Ex. B, First Denial Letter, ECF p. 3).  In that letter, Hartford stated that it did not receive documentation showing that Michael paid any premiums beyond October 29, 2017. (Id. at ECF p. 4).  Therefore, Hartford concluded that Michael failed to pay his premiums and that his coverage lapsed as of October 29, 2017. (Id.)

The same letter, however, also references correspondence from Michael's counsel dated January 31, 2018, asserting that Michael paid premiums from July 2017 through November 2017 but that those premiums were returned to him. (Id. at ECF p. 3).  Additionally, per the letter, Michael's counsel requested to be notified if additional premiums were due. (Id.)

---

[7] The letter dated August 15, 2018 indicates that Michael's "employer advised that benefits were discontinued as the claimant did not continue to make timely payments of benefits." (Doc. 15-2, Ex. B, First Denial Letter, ECF p. 3).

As plaintiffs allege in the complaint, defendants' determination conflicts with plaintiffs' reasonable expectations to receive the Premium Waiver. (Doc. 1, Compl. ¶ 22).  The statements in Hartford's letter, coupled with plaintiffs' allegations in the complaint, show that a factual dispute exists as to whether Michael paid his life insurance premiums beyond October 2017.

Moreover, in its August 15, 2018 letter, Hartford stated that it received a notice of continuation of coverage form signed by Michael and dated January 24, 2018. (Doc. 15-2, Ex. B, First Denial Letter, ECF p. 3).  Per Hartford, that form indicated that Michael requested a portability enrollment form and an LTD conversion quote. (Id.)   As asserted by Hartford, its conversion unit confirmed that a quote was mailed on March 5, 2018, presumably to plaintiffs' counsel. (Id. at ECF p. 4).  However, Hartford noted that it received no response from Michael or his counsel, and therefore coverage was not converted. (Id.)  Although it is unclear whether the portability enrollment form related in any way to the Waiver of Premium Benefit and the conversion of Michael's group life insurance to an individual life insurance policy, this correspondence contributes to the underlying factual dispute.[8] (See Doc. 15-4, Ex. D, Third Denial Letter, ECF p. 5).

---

[8] Hartford indicated in the letter that Michael's counsel advised that the appeal was incomplete as of February 13, 2018. (Doc. 15-2, Ex. B, First Denial Letter, ECF p. 3).  Hartford informed him that the appeal submission was due on July 20, 2018. (Id.)  Nevertheless, per Hartford, it did not receive additional documentation to supplement the appeal as of August 15, 2018. (Id.)

**ii.    Whether the Policy's Language Is Ambiguous**

Hartford asserts that it properly denied Michael's Premium Waiver under the Policy's unambiguous language. (Doc. 15, Hartford Br. in Supp. at 11).  To support its position, Hartford cites the Policy provisions.  According to the Policy, "Waiver of Premium is a provision which allows You [Michael] to continue Your and Your Dependent's Life Insurance coverage without paying premium, while You are Disabled and qualify for Waiver of Premium." (Doc. 15-1, Ex. A, Policy, at ECF p. 47). "To qualify for Waiver of Premium" an insured must, *inter alia*, "be Disabled and provide Proof of Loss that You have been Disabled for 6 consecutive month(s), starting on the date You were last Actively at Work [.]" (Id.) However, coverage ends "the date Your Employer terminates Your employment"—which in this case for Michael, was November 30, 2017—or "the date the premium payment is due but not paid"—which, according to Hartford, was October 29, 2017. (Id. at ECF p. 45).[9]

---

[9] In their brief in opposition, plaintiffs dispute that November 30, 2017 was Michael's last day at work. (Doc. 23, Second Br. in Opp. at 6, 22). According to plaintiffs, Michael's employment did not terminate until March 28, 2019.  Plaintiffs further assert that defendants deceptively and intentionally backdated Michael's employment status to deprive him of the Waiver of Premium Benefit that existed under the Policy. (Id. at 6, 22).  The court will not consider this argument because "[a] complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Per Hartford, because Michael became disabled on June 16, 2017, he could not have become eligible for the Premium Waiver prior to December 16, 2017, six months after he became disabled. (Doc. 15, Hartford Br. in Supp. at 4). Hartford explained in its August 15, 2018 letter that premiums are not waived for the first six (6) months of a claimant's disability. (Doc. 15-2, Ex. B, First Denial Letter, ECF p. 3). The letter further explained that Michael was not eligible for a Premium Waiver because he was no longer covered under the Policy as of December 17, 2017. (Id. at ECF p. 4). As asserted, coverage terminated on the earlier of two dates: the date the premium payment was due but not paid, i.e., October 29, 2017, versus the date the employer terminated Michael's employment—November 30, 2017. (Id. at ECF p. 3).

To successfully challenge a plan's denial of benefits under Section 502(a)(1) of ERISA, a beneficiary must demonstrate that the denial was based on an improper interpretation of the plan's terms. 29 U.S.C. § 1132(a)(1)(B).[10] In evaluating whether a plan's interpretation was improper, a court must first determine the appropriate standard of review. Miller v. Am. Airlines, Inc., 632 F.3d 837, 844-45 (3d Cir. 2011). If the plan grants the administrator express

---

[10] Section 502(a)(1)(B) of ERISA provides that an action "may be brought--(1) by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

discretion to interpret plan language, the administrator's interpretation will be upheld unless it constitutes an abuse of discretion or is arbitrary and capricious. Id. Absent such discretion granted to the administrator, the court reviews the administrator's interpretation *de novo* to determine whether it was fundamentally "correct." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (quoting Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808-09 (6th Cir. 2002)).

When applying the more deferential abuse-of-discretion standard, courts analyze the administrator's interpretation under a two-step framework.  At the first step, the court considers whether the plan's language is ambiguous, i.e., "subject to reasonable alternative interpretations." Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund, 933 F.3d 257, 264 (3d Cir. 2019) (quoting Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001) (citation omitted)). If the plan's language is unambiguous, the court will not disturb the administrator's interpretation so long as it is " 'reasonably consistent' with the plan's text." Id. (quoting Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates, 871 F.3d 239, 245 (3d Cir. 2017)).  If, however, the plan's terms are ambiguous, the court must take an additional step and evaluate whether the administrator's interpretation of the plan was reasonable. Id.  In this regard, the Third Circuit Court of Appeals has set forth a five-factor test for

14

assessing the reasonableness of a plan administrator's interpretation. <u>Howley v. Mellon Fin. Corp.</u>, 625 F.3d 788, 795 (3d Cir. 2010).[11]

As discussed above, Hartford's denial of the Premium Waiver turns on the factual dispute as to whether Michael paid his life insurance premiums through November 2017. At this juncture, the court need not determine whether the Policy's language governing the Waiver of Premium Benefit is ambiguous, nor need it reach the merits of the denial itself, as a motion for summary judgment is the more appropriate vehicle for resolving this issue. Even Hartford acknowledges that plaintiffs' allegations in the complaint raise a factual issue that cannot be resolved on a motion to dismiss. Therefore, Hartford's motion to dismiss Count I of the complaint as it relates to the Premium Waiver will be denied.

### 2. The Duplicative Nature of Plaintiffs' Claims Under Section 502(a)(3) of ERISA

Defendants argue that plaintiffs' claim for breach of fiduciary duty under Section 502(a)(3) of ERISA (Count II) cannot be pursued alongside their wrongful

---

[11] The Third Circuit Court of Appeals has provided five factors for courts to analyze when evaluating a plan's interpretation under Section 502(a)(1). These factors include: "(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan." <u>Howley</u>, 625 F.3d at 795 (quoting <u>Moench v. Robertson</u>, 62 F.3d 553, 566 (3d Cir. 1995) (citation omitted)).

denial of benefits claim under Section 502(a)(1)(B) (Count I).[12] (Doc. 13, GFS Br. in Supp. at 11; Doc. 15, Hartford Br. in Supp. at 15).  According to defendants, the only conduct plaintiffs identify as a breach of fiduciary duty is the denial of benefits under the Plan. The court disagrees with defendants.

Section 404 of ERISA requires every fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[.]" 29 U.S.C. § 1104(a)(1)(A).[13]  Fiduciaries must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Id. § 1104(a)(1)(B).  Section 404 further mandates that fiduciaries act "in accordance with the documents and instruments governing the plan[.]" Id. § 404(a)(1)(D).

---

[12] Section 502(a)(3) of ERISA states that:

> A civil action may be brought--by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan [.]

29 U.S.C. § 1132(a)(3).

[13] "A 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that 'he exercises any discretionary authority or discretionary control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." Ream v. Frey, 107 F.3d 147, 151 (3d Cir. 1997) (quoting 29 U.S.C. § 1002(21)(A)).

16

Although ERISA clearly sets forth the statutory disclosure and reporting requirements applicable to fiduciaries, "Congress chose not to enumerate all the fiduciary duties owed." Jordan v. Fed. Exp. Corp., 116 F.3d 1005, 1013 (3d Cir. 1997) (citing Varity Corp. v. Howe, 516 U.S. 489, 496 (1996)). "Consequently, the [Supreme] Court has indicated that courts must create federal common law to flesh out the meaning of ERISA and effectuate fully its meaning and purpose." Ream, 107 F.3d at 154 n.6.  Accordingly, courts have recognized specific fiduciary duties under federal common law that are not explicitly codified in Section 404 of ERISA.  For example, the Third Circuit Court of Appeals has recognized the duty of loyalty, In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 57 F.3d 1255, 1261-62 (3d Cir. 1995), the duty of disclosure, In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996), and the duty to avoid misrepresentations, Burstein v. Ret. Acct. Plan for Emps. of Allegheny Health Educ. & Rsch. Found., 334 F.3d 365, 384 (3d Cir. 2003).

Count II of the complaint consists of allegations in its breach of fiduciary duty claim under Section 502(a)(3) of ERISA against defendants. (Doc. 1, Compl. ¶¶ 26-29). Some of these allegations include the following:

- Improper supervision and administration of the Plan, (Id. ¶ 28);
- Failure to properly represent the benefits that Michael was entitled to receive, (Id.);
- Failure to provide plan information and timely notices as requested, (Id.);
- Improper deduction of Jacob's dependent benefits, (Id. ¶29);

17

- Improper denial of benefits under the Plan, (Id.);

The court is not persuaded that dismissal is appropriate at this stage of the litigation. In Varity, the United States Supreme Court interpreted Section 502(a)(3) of ERISA as a "catchall" provision that "offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity, 516 U.S. at 512.  There, the Supreme Court held that the plaintiffs who could not seek relief under Section 502(a)(1)(B) for benefits due were nonetheless entitled to rely on Section 502(a)(3) to pursue other "'appropriate' equitable relief." Id.  At the same time, the Supreme Court emphasized that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief [.]" Id. at 515.  Hence, if recovery is available under another provision, equitable relief is not appropriate under Section 502(a)(3) of ERISA.[14] Id.

---

[14] Circuit Courts of Appeals uniformly interpret Varity to bar double recovery under both Section 502(a)(1) and Section 502(a)(3).  They disagree however, on whether plaintiffs may plead both claims at once.  Most Court of Appeals have held that if a claim can proceed under Section 502(a)(1)(B), a parallel Section 502(a)(3) claim would thus be barred. See, e.g., Forsyth v. Humana, Inc., 114 F.3d 1467, 1474-75 (9th Cir. 1997) (citation omitted); Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610-11 (5th Cir. 1998); Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 107 (4th Cir. 2006); Antolik v. Saks, Inc., 463 F.3d 796, 803 (8th Cir. 2006); Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1287 (11th Cir. 2003); Mondry v. Am. Fam. Mut. Ins. Co., 557 F.3d 781, 805 (7th Cir. 2009).

The Second Circuit Court of Appeals, in Devlin v. Empire Blue Cross & Blue Shield, rejected the majority's strict view. 274 F.3d 76, 89 (2d Cir. 2001).  The Second Circuit Court of Appeals has held that a Section 502(a)(3) claim should not be dismissed at the pleading stage and may proceed in the alternative, so long as it seeks relief unavailable under Section 502(a)(1). This

Since <u>Varity</u>, courts within the Third Circuit have held that a party cannot simultaneously recover under both Section 502(a)(3) and Section 502(a)(1)(B). <u>See</u> <u>Freitas v. Geisinger Health Plan</u>, 542 F. Supp. 3d 283, 310–12 (M.D. Pa. 2021) (Brann, J.).  However, they disagree on whether a plaintiff may pursue both claims at the pleading stage as alternative bases for relief. <u>Id.</u>  Neither the Supreme Court nor the Third Circuit Court of Appeals has squarely addressed this question in the context of a motion to dismiss, and there remains a split of authority within the district courts in this Circuit. <u>See</u> <u>Ream</u>, 107 F.3d at 152-53. (Ream, similar to the plaintiffs in <u>Varity</u>, had no avenue of recovery other than Section 502(a)(3).  He could not proceed under Section 502(a)(1)(B) because, as in <u>Varity</u>, no benefits were due to him under the terms of a functioning plan).

Although <u>Varity</u> emphasized that Section 502(a)(3) is a provision of last resort, <u>Varity</u> also recognized that Congress did not intend to leave beneficiaries without a remedy. 516 U.S. at 513.  While plaintiffs may not recover under duplicative claims, this does not entail that they be barred from asserting a claim under Section 502(a)(3) where it is uncertain whether another ERISA provision will afford adequate relief. <u>See</u> <u>Freitas</u>, 542 F. Supp. 3d at 312; <u>see also</u>

---

approach rests on a reading of <u>Varity</u> that permits fiduciary duty claims when no other ERISA remedy exists.

DiGregorio v. Trivium Packaging Co., 2025 WL 782091, at *6 (W.D. Pa. Mar. 12, 2025) (Schwab, J.). [15]

Here plaintiffs' breach of fiduciary duty claim may rest on defendants' alleged misrepresentations regarding Plan information, which prevented the Pitskos from taking the steps necessary to continue Michael's life insurance coverage under the Plan.  These allegations are distinct from the Pitskos' claim for wrongful denial of benefits.

Whether Counts I and II are ultimately duplicative, and whether relief under Section 502(a)(1)(B) is available, are questions that must be determined after discovery and are best resolved at the summary judgment stage. Therefore, defendants' motions to dismiss will be denied with respect to Count II of the complaint.

---

[15]  In this district, Chief Judge Matthew W. Brann relied on the Second Circuit Court of Appeals' approach in Devlin, holding that plaintiffs should not be barred at the pleading stage from asserting Section 502(a)(3) claims when it remains uncertain whether Section 502(a)(1)(B) will provide adequate relief. 542 F. Supp. 3d at 312.  Chief Judge Brann reasoned that dismissal on duplicative grounds was premature at the motion to dismiss stage. Id.  In the Western District of Pennsylvania, Judge Arthur J. Schwab adopted the same reasoning in DiGregorio, 2025 WL 782091, at *6. ("Whether the claims set forth in Counts 1 and 2 of the Amended Complaint are 'truly duplicative,' and relief actually is available to Plaintiff under § 1132(a)(1)(B), must be subject to further discovery and is best be resolved upon a motion for summary judgment.").

### 3. Gordon Food Services as a Party Under Count III

GFS argues that it is an improper defendant under Count III of the complaint. (Doc. 13, GFS Br. in Supp. at 14). As previously stated, Count III relates to the propriety of the offset of Jacob's dependent benefits against Michael's LTD benefits. (Doc. 1, Compl. ¶¶ 30-33). Plaintiffs admit that "the Pitskos have not pled any facts showing or even suggesting that Gordon Food Services somehow became a functional or even *de facto* fiduciary by exercising any discretionary control over the distribution of benefits to Jacob Pitsko." (Doc. 16, First Br. in Opp. at 19). However, in the same breath, plaintiffs contradict this admission by asserting that each defendant played a role in the implementation of the Policy as related to the offset of Jacob's dependent benefits. (Id. at 20). Nevertheless, the court need not address plaintiffs' contradictory statements on this issue because, as explained next, the reduction of Michael's LTD benefits by Jacob's dependent benefits was proper. Thus, GFS's motion will be granted as to Count III.[16]

---

[16] GFS only asserted that it is an improper defendant under Count III. As a result, the court need not address whether it was a proper defendant under the remaining Counts. See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir.1994); see also Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc., 311 F. App'x 556, 558–59 (3d Cir. 2009) ("Unless an employer is shown to control [the] administration of a plan, it is not a proper party defendant in an action concerning benefits [under an ERISA].") (citation omitted).

**4. The Offset of Jacob's Dependent Benefits Against Michael's LTD Benefits**

Hartford asserts that the Policy's language unambiguously requires Hartford to consider Jacob's dependent benefits when calculating Michael's LTD benefits. (Doc. 15, Hartford Br. in Supp. at 9-10). Specifically, Hartford contends that when calculating Michael's LTD benefits, it was required to reduce Jacob's dependent benefits from Michael's gross monthly LTD benefits. (Id. at 10). Plaintiffs counter that the consideration of Jacob's dependent benefits by Hartford when calculating Michael's LTD benefits was improper. (Doc. 23, Second Br. in Opp. at 15).[17]

The recovery of plaintiffs' benefits, the enforcement of their rights, and the clarification of their rights for future benefits are governed by the terms of the ERISA plan. Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 108 (2013) (citing 29 U.S.C. § 1132(a)(1)(B)). In a dispute involving an ERISA plan, "[t]he strongest external sign of agreement between contracting parties is the words they use in their written contract." In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996) (quoting Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir.1980)). This leaves no

---

[17] Plaintiffs concede that Michael's LTD benefits were reduced by his SSD benefits in accordance with the Plan. (Doc. 1, Compl. ¶ 5). Thus, plaintiffs do not challenge the reduction of Michael's LTD benefits by his SSD benefits.

doubt that the "the sanctity of the written words of the contract is embedded in the law of contract interpretation." Id. (quoting Mellon Bank, N.A., 619 F.2d at 1009).

To address plaintiffs' allegations, the court must review the Policy terms governing the calculation of Michael's gross monthly LTD benefit.  The Policy provides that Michael's monthly LTD benefit is calculated by multiplying his pre-disability earnings by the benefit percentage and subtracting from that any "Other Income Benefits." (Doc. 15, Hartford Br. in Supp. at 5; Doc. 15-1, Ex. A, Policy, at ECF p.16).  The Policy provides in relevant part that:

> **Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits for which You or Your family are eligible or that are paid to You, or Your family or to a third party on Your behalf, pursuant to any . . . 5) disability benefits under: a) the United States Social Security Act or alternative plan offered by a state or municipal government . . . that You, Your spouse and/or children, are eligible to receive because of Your Disability . . . .

(Doc. 15-1, Policy, Ex. A at ECF p. 24).

A court reviewing a plan administrator's interpretation of an ERISA plan must first begin by determining if the terms of the plan are ambiguous. Bill Gray Enters., 248 F.3d at 218.  As previously mentioned, a term is ambiguous "if it is subject to reasonable alternative interpretations." Id.  However, where the

language of the plan is unambiguous, the plain language governs, and any deviation from the plain meaning is arbitrary. Id.; see also Mellon Bank, N.A., 619 F.2d at 1010.  Conversely, if a court determines that a provision is ambiguous, it must take the additional step of determining whether the plan administrator's or fiduciary's decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-12 (1989); see also Bill Gray Enters., 248 F.3d at 218. "Whether an ERISA plan is ambiguous is a question of law." In re Unisys, 97 F.3d at 715 (citing Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 92 (3d Cir.1992)).

In their opposition, plaintiffs vaguely contend that the Policy is ambiguous. (Doc. 23, Second Br. in Opp. at 15). [18]   The court disagrees with plaintiffs' contentions.

"Benefit offsets are common features of LTD plans. There is an almost even split among Fortune 500 company LTD plans between those which provide for offsets of only the employee's Social Security disability benefits and those which also provide for the offset of family Social Security disability benefits." In re

---

[18] Plaintiffs did not allege in the complaint that Policy terms were ambiguous.  Rather, their arguments concerning the offset of Jacob's dependent benefits were primarily based on the assertion that Jacob's dependent benefits belonged to him, not his parents. Plaintiffs raised the issue of ambiguity in the Policy's language for the first time in their brief in opposition. (Doc. 23, Second Br. in Opp. at 11).  Although plaintiffs may not amend the complaint by their brief in opposition to a motion to dismiss, Com. of Pa. ex rel. Zimmerman, 836 F.2d at 181 (citation omitted), the court will consider this issue since Hartford raised it in its motion.

Unisys, 97 F.3d at 715.  As the Third Circuit Court of Appeals has stated, "[i]t is a simple task of draftsmanship to specify which offsets are applicable in any particular plan." Id.

However, the offset of dependent benefits from LTD benefits is proper under one condition, that is when the language of the ERISA plan or policy expressly provides for that offset.  In re Unisys, 97 F.3d at 716; Lamb v. Connecticut Gen. Life Ins. Co., 643 F.2d 108, 109 n.1, 111-12 (3d Cir. 1981). "Because of the twofold nature of Social Security disability awards—primary and dependent—LTD plans must specify whether one or both kinds of awards are to be offset from plan benefits." In re Unisys, 97 F.3d at 716.[19]  Thus, to the extent the policy expressly authorizes such offsets, the reduction of benefits payable to a participant under the policy may properly encompass not only the participant's own Social Security benefits but also those received by his dependents. Lamb, 643 F.2d at 111-12.

The language of the Policy here is substantially similar to the ERISA policy language at issue in other cases. See Lamb v. Connecticut Gen. Life Ins. Co., 509 F. Supp. 560, 562 (D.N.J. 1980), aff'd, 643 F.2d 108 (3d Cir. 1981); see also Patchell, 2018 WL 1524531, at *3.  It is also comparable to plans the Third

---

[19] "LTD benefits" may be offset "by the amount of Social Security benefits paid to policyholders and their dependents." Patchell v. CIGNA Health & Life Ins. Co., 2018 WL 1524531, at *6 (W.D. Pa. Mar. 28, 2018) (citing Lamb, 643 F.2d at 112).

Circuit Court of Appeals pointed to in <u>In re Unisys</u> as examples that expressly provide for the offset of dependent benefits. 97 F.3d at 716.[20]  The Policy's plain language here also expressly provides for dependent benefits offsets and is not subject to reasonable alternative interpretations.  Additionally, Hartford's interpretation of the Policy is reasonably consistent with the Policy's own plain text.  The Policy's language is therefore unambiguous, and the court need not take the additional step of determining whether Hartford's interpretation of the Policy was arbitrary and capricious.

---

[20] In <u>In re Unisys</u>, the Third Circuit Court of Appeals determined whether Unisys, a provider of long-term disability insurance, could offset Social Security payments made directly to the insured's dependents. 97 F.3d at 716.  The payments at issue in that case were Social Security disability benefits paid to the plan participants' dependents, which the disabled participants were not entitled to receive, and which were only the property of the dependents. <u>Id</u>. The court examined the language of an earlier version of the policy which defined "Other Income Benefits" as follows:

> The amount of disability or retirement benefits under the
> United States Social Security Act, The Canada Pension Plan, or the
> Quebec Pension Plan, or any similar plan or
> act, as follows:
> > a. disability benefits for which:
> > i. you are eligible, *and*
> > ii. *your spouse, child or children are eligible because of your disability* [.]

<u>Id.</u> at 712.

The Court of Appeals concluded that the language of the earlier version of the policy "specifically provided for dependent offsets." <u>Id.</u> at 716.

It is important to note that the case involved a revised version of the policy, which provided only that long-term disability benefits *"you receive may be adjusted if you receive ... disability income from other sources."* <u>Id.</u> at 715.  According to the Third Circuit Court of Appeals, the revised policy's language was unambiguous, and therefore did not permit dependent benefits offsets. <u>Id.</u> at 717.

To further challenge the dependent benefits offsets, plaintiffs argue that "Other Income Benefits" are not terms and conditions but merely definitions. (Doc. 23, Second Br. in Opp. at 11).  To the extent plaintiffs invite the court to disregard the Policy's definition section, it bears emphasizing that "the parties remain bound by the appropriate objective definition of the words they use to express their intent[.]" In re Unisys, 97 F.3d at 715.  Plaintiffs' position on this issue appears inconsistent.  On the one hand, they quote the Policy's definition of "Other Income Benefits" to agree that Hartford properly reduced Michael's LTD benefits by his individual SSD benefits. (Doc. 23, Second Br. in Opp. at 11).  On the other hand, they invoke the very same language to argue that Jacob's dependent benefits were improperly offset from Michael's LTD benefits. (Id.)

Additionally, plaintiffs assert that the "Other Income Benefits" are not described in the core document of the handbook itself. [21] (Id.)  Contrary to this assertion, "Other Income Benefits" are defined on page 23 of both documents, and the definitions are identical. (See Doc. 15-1, Ex. A, Policy, at ECF p. 24; Doc. 23-1, Ex. B, Handbook, at ECF p. 31).

Plaintiffs also contend that the offsets of dependent benefits are improper here because such benefits belong solely to the dependents and not to their

---

[21] Plaintiffs attached a handbook to their brief in opposition that is substantially identical to the Policy. (Doc. 23-1, Ex. B, Handbook). The handbook consists of fifty-six (56) pages, whereas the Policy is nearly one hundred (100) pages.

parents. (Doc. 23, Second Br. in Opp. at 12, 16). Plaintiffs' statement is correct insofar as dependent benefits are the property of the dependents, not the disabled parent. See In re Unisys, 97 F.3d at 716. "Disability benefits paid to family members such as children are designed to provide the recipient for loss of support he or she sustains because of the disability of a parent" and [t]hese awards are the property of the dependent." Id. However, this characterization of the dependent benefits does not affect the propriety of the offset. See id.

Lastly, plaintiffs submit that the offset of Michael's LTD benefits by Jacob's dependent benefits violates public policy set by the Social Security Act. (Doc. 23, Second Br. in Opp. at 15). Plaintiffs' argument is unpersuasive. The Third Circuit Court of Appeals has held that "there is nothing in [Section] 402(d)(1) [of the Social Security Act] to suggest that it prevents an employer from bargaining for an insurance contract to cover its employees that offsets Social Security benefits received for the support of dependents against the disability payments to be made under the policy." Lamb, 643 F.2d at 112.

In sum, Hartford has properly offset Jacob's dependent benefits when calculating Michael's LTD benefits, as required by the Policy's unambiguous language. Hence, Hartford's motion to dismiss Count III of the complaint will be granted.

**5. Preemption of State Law Breach of Contract Claims by ERISA**

Hartford and GFS argue that plaintiffs' state law breach of contract claims are preempted by ERISA. (Doc. 13, GFS Br. in Supp. at 7-11; Doc. 15, Hartford Br. in Supp. at 14-17).

Section 514 of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). " 'Relate to' has always been given a broad, common-sense meaning, such that a state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 293–94 (3d Cir. 2014) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)).  With that in mind, "State law" shall encompass "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State[.]" Menkes, 762 F.3d at 294 (quoting 29 U.S.C. § 1144(c)(1)).  Thus, "State law" is "not limited to state laws specifically designed to affect employee benefit plans[.]" Id. (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987)).

For instance, claims for breach of contract, breach of fiduciary duty, and fraud in the inducement based on alleged improper processing of long-term disability benefits under an employee benefit plan "undoubtedly meet the criteria for pre-emption under § 514(a) [.]" Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d

266, 278 (3d Cir. 2001) (quoting <u>Pilot Life Ins. Co.</u>, 481 U.S. at 47-48)).  Such claims cannot "proceed because of the 'expansive sweep of [ERISA's] pre-emption clause.' " <u>Id.</u> (quoting <u>Pilot Life Ins. Co.</u>, 481 U.S. at 47-48).

The Third Circuit Court of Appeals has noted in <u>Pane</u> that breach of contract claims under state law and ERISA cannot co-exist for purposes of enforcement of an ERISA plan. <u>Pane v. RCA Corp.</u>, 868 F.2d 631, 635 (3d Cir. 1989).  The Court of Appeals added "to the extent that these state law claims would support an award of punitive damages, the claim for such relief is also preempted." <u>Id.</u> at 635.

Plaintiffs and defendants agree in part on this issue.  In the complaint, plaintiffs allege that defendants breached their contractual obligation to implement the Plan in accordance with ERISA. (Doc. 1, Compl. ¶ 37).  To that end, plaintiffs expressly base their breach of contract claims on the administration and implementation of Michael's benefits under the Plan. (<u>Id.</u>) Nevertheless, plaintiffs eventually do concede that ERISA provides the exclusive remedy for plan participants seeking to enforce their rights under such a plan and admit that their state law breach of contract claims are preempted by ERISA. (Doc. 16, First Br. in Opp. at 11-13; Doc. 23, Second Br. in Opp. at 4, 24-25). However, plaintiffs' concession on this issue excludes state law breach of

contract claims as related to the offset of Jacob's dependent benefits. (Doc. 16, First Br. in Opp. at 11; Doc. 23, Second Br. in Opp. at 4, 24-25).

The breach of contract claims related to Jacob ultimately turn on the propriety of offsetting his dependent benefits against Michael's LTD benefits. (Doc. 16, First Br. in Opp. at 12; Doc. 23, Second Br. in Opp. at 4, 25). Given that the offset of Jacob's dependent benefits was proper under the terms of the Policy, plaintiffs have no viable state law claims remaining. Consequently, defendants' motions to dismiss Count IV will be granted.

### 6. Jury Demand

Defendants also move to strike plaintiffs' jury demand on the ground that ERISA actions are equitable in nature, specifically when brought under Section 502(a)(1)(B). (Doc. 13, GFS Br. in Supp. at 15-17; Doc. 15, Hartford Br. in Supp. at 17). Per defendants, it is well settled in the Third Circuit that parties in ERISA actions have no right to a jury trial. (Doc. 13, GFS Br. in Supp. at 16; Doc. 15, Hartford Br. in Supp. at 17) (citing among others Pane, 868 F.2d at 636-37; Turner v. CF & I Steel Corp., 770 F.2d 43, 46 (3d Cir.1985)). The court agrees with the defendants. See FED. R. CIV. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

"ERISA itself does not make any provision for a jury trial[.]" <u>Cox v.</u>

<u>Keystone Carbon Co. (Cox I)</u>, 861 F.2d 390, 393 (3d Cir. 1988) (quoting <u>Turner</u>,

770 F.2d at 46)). "Those causes of action authorized by section 502(a)(3) are by

its terms explicitly equitable, and we have held that there is no right to a jury trial

for them." <u>Pane</u>, 868 F.2d at 636 (quoting <u>Cox</u>, 861 F.2d at 390). Additionally, it

is well settled that a cause of action for the recovery of benefits under section

502(a)(1)(B) is also equitable in nature. <u>Id.</u>

Plaintiffs admit that they are not entitled to a jury trial on their ERISA claims

and that the jury demand as to those claims should be stricken. (Doc. 16, First

Br. in Opp. at 21; Doc. 23, Second Br. in Opp. at 15). They nevertheless

maintain that Jacob's breach of contract claims are triable by a jury because they

are independent from the ERISA claims. (Doc. 16, First Br. in Opp. at 21; Doc.

23, Second Br. in Opp. at 15). Because the breach of contract claims on Jacob's

behalf will be dismissed, defendants' motions to strike will be granted and

plaintiffs' request for jury trial will be stricken from the complaint.

**Conclusion**

For the reasons set forth above, the motions to dismiss filed by GFS and

Hartford, (Docs. 12, 14), will be granted in part and denied in part. The motions to

dismiss will be granted as to Counts III and IV of the complaint. The claims

related to the offset of Jacob's dependent benefits against Michael's LTD

benefits in Count III will be dismissed with prejudice.  Plaintiffs' state law breach of contract claims in Count IV will be dismissed with prejudice.  Defendants' motions to strike the jury demand will be granted. The motions will be otherwise denied.  Specifically, Hartford's motion to dismiss Count I of the complaint as it relates to the Waiver of Premium Benefit will be denied.  Additionally, Hartford's and GFS's motions to dismiss plaintiffs' fiduciary duty claim in Count II of the complaint will also be denied.  An appropriate order follows.

Date: _9/11/25_

JUDGE JULIA K. MUNLEY
United States District Court